**LIGHTWAVE TECHNOLOGIES, L.L.C., Plaintiff,**

v.

**ESCAMBIA COUNTY; Escambia County Commission, Defendants.**

**No. Civ.A.98–0492–BH–C.**

United States District Court, S.D. Alabama, Southern Division.

Feb. 22, 1999.

H. William Wasden, Mark E. Tindal, Pierce, Ledyard, Latta & Wasden, P.C., Mobile, AL, for Lightwave Technologies, LLC, plaintiff.

James B. Rossler, Mobile, AL, Robert S. Presto, Brewton, AL, W. Perry Hall, Stout & Rossler, Mobile, AL, for Escambia County, Alabama and Escambia County Commission, defendants.

## MEMORANDUM OPINION AND ORDER

HAND, Senior District Judge.

This action comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 15). Because. the court agrees that the Tax Injunction Act, 28 U.S.C. § 1341, prohibits it to grant the relief sought in plaintiff's complaint, the motion to dismiss shall be granted.

### I. BACKGROUND

The plaintiff, Lightwave Technologies, L.L.C. ("Lightwave"), is a telecommunications company with its principal place of business in Monroeville, Alabama. Lightwave alleges that it embarked on a project to construct a fiber-optic telecom-

munications network within Alabama which would provide inter-exchange service between Mobile and Montgomery. Lightwave planned to install 122 miles of optical fiber within the State; approximately 17 miles (89,760 feet), according to the plan, would cross the northwest corner of Escambia County, the defendant in this case.[1]

The County informed Lightwave that it would allow Lightwave to place the proposed fibers within the County's rights-of-way "subject to Lightwave Technologies paying the $1.00 per linear foot user fee for use of the County Rights of Way and holding the County harmless for any damages to their cable in the future." The Utility Agreement between the parties, executed on March 23, 1998, provided in detail that Lightwave would be responsible for restoring the condition of the County's right-of-way to its previous condition at its own expense.

Escambia County has, on previous occasions, imposed a $1.00 per linear foot fee on for-profit companies installing gas transmission lines or pipes within the County's right-of-way. County Commissioners Larry White and David Stokes testified that the primary purpose of the County's right-of-way fee is to generate revenue for the County. The proceeds of the fee are placed in the County's Gasoline Tax Fund, along with the tax revenues generated by the County's 7 cent per gallon gasoline tax. The use of the Gasoline Tax Fund is restricted to road and bridge construction and repair and paying the County Engineer's salary.

Lightwave filed this action in this court on May 8, 1998. Lightwave principally seeks a declaratory judgment from this court that the County's $1.00 per linear foot right of way fee violates certain provisions of the Telecommunications Act of 1996.[2] The evidence in this case reflects that Lightwave has proceeded with construction in Escambia County, and has placed the contested funds in escrow pending the final outcome of this litigation.

Before the court are the County's motion to dismiss, and cross-motions for summary judgment on the merits. For the following reasons, the court will grant the County's motion to dismiss.

## II. DISCUSSION

### A. The Tax Injunction Act

■ The Tax Injunction Act, enacted in 1937, provides that the "District Courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. With the enactment of the Act, new law was not created as such; rather, the Act codified a long-standing prudential rule of restraint counseling against federal court interference in matters of State revenue collection. *See, e.g., Dows v. City of Chicago,* 78 U.S. 108, 11 Wall. 108, 110, 20 L.Ed. 65 (1870). The Act also elevated the rule from prudential to jurisdictional status. *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976).

As the United States Supreme Court has stated,

---

1. Lightwave also sues the Escambia County Commission. However, because the County itself is a "body corporate" in its own right, with the "power to sue or be sued," Ala.Code § 11–1–2, the court deems this to be a one-defendant case. *See Calvert v. Cullman County Commission,* 669 So.2d 119 (Ala.1995) (judgment against county commission deemed judgment against county).

2. Plaintiff relies on § 101(a) of the Telecommunications Act of 1996, which provides, *in*

*paria materia:* "No State or local statute or regulation ... may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.... Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation ... on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way...." 47 U.S.C.A. § 253(a), (c) (West 1998 Supp.).

The statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.

*Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981) (internal citations omitted). The Tax Injunction Act rests on the premises of "parity" between State and Federal courts, and the State courts' power—as well as their obligation—to adjudicate claims based on federal law.

■ The Act prohibits federal courts from granting injunctive relief, and declaratory judgments as well. *State of California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).

B. Is Escambia County's assessment a "tax under State law?"

■ Whether a particular exaction is a tax under the Tax Injunction Act is a question of federal law, to be determined in accordance with the congressional policies underlying the Act. *Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371 (3d Cir.1978). That policy is

to promote comity and to afford the states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising.

*Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987). The label attached by the County may be instructive in some cases, but it is not dispositive. *Id.* Therefore, contrary to plaintiff's arguments, the County's failure to designate the right-of-way fee as a "tax" does not clothe this court with jurisdiction.

Plaintiff places principal reliance on its argument that the County's right-of-way fee is more in the nature of a regulatory fee than a tax. The court does not agree.

It is true that the courts construing the Tax Injunction Act have attempted to distinguish between taxes and regulatory fees. In general terms,

A tax is generally a revenue-raising measure, imposed by a legislative body, that allocates revenue to a general fund, and is spent for the benefit of the entire community. A user fee, by contrast, is a payment given in return for a government provided benefit and is tied in some fashion to the payor's use of the service.

*Folio v. City of Clarksburg,* 134 F.3d 1211 (4th Cir.1998) (internal quotation marks and citations omitted).

■ Plaintiff argues that the County's right-of-way fee is a regulatory fee, not a "tax under State law," because, allegedly, "concern over maintenance and repairs were the principal motivating factor in imposition of the user fees."

Several factors counsel the court to find that the County's imposition of the right-of-way fee in this case was primarily a revenue-raising measure. First, plaintiff presents no evidence that the County attempted to tailor the amount of the fee to the expected cost of maintaining its right-of-way. On the contrary, as plaintiff itself argues, the County applied the same fee on pipeline installation as it imposed on the installation of its optical fiber, which plaintiff claims is much less disruptive to the surface. This lack of correlation between expected cost to the county and the magnitude of the fee militates in favor of a finding that the right-of-way fee is a revenue-raising "tax under State law." *Compare Thrope v. State of Ohio,* 19 F.Supp.2d 816 (S.D.Ohio 1998) (disabled parking permit fee of $5.00 was not a "tax"); *Lussier v. State of Florida,* 972 F.Supp. 1412 (M.D.Fla.1997) (disabled parking permit fee of $15.00, with proceeds applied to education and transportation, was a "tax"). In addition, the County required Lightwave to restore the rights-of-way to their original condition at its own expense, in addition to the payment of the fee, and the

County required Lightwave to hold the County harmless for any future damages that its network might sustain. These facts demonstrate that the County did not impose the fee in order to cover any future expenses it may incur in connection with Lightwave's use of its right-of-way.

Second, the court finds that the ultimate use of the revenue raised points strongly to the conclusion that the right-of-way fee is a "tax under State law" for purposes of the Tax Injunction Act. As set forth *supra*, the proceeds of the right-of-way fee are deposited in the County's Gasoline Tax Fund. These funds are used for road and bridge construction—expenditures completely unrelated to telecommunications and undisputably for the benefit of the public as a whole. *See Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir.1981) (registration fees used for highway construction constituted a "tax under State law" immune from federal court review under Tax Injunction Act).

Finally, two County Commissioners have testified that the fee was intended as a revenue-raising measure for the County.

Plaintiff argues, vainly, that this case surely can not involve a "tax under State law" under the Tax Injunction Act, because Escambia County lacks the power, under Alabama law, to tax without statutory authority from the Alabama Legislature. This, of course, is a question of State law, and it is exactly the sort of State-law question this court is prohibited to consider by the Tax Injunction Act. A case directly on point is Charles R. *Shepherd, Inc. v. Monaghan*, 256 F.2d 882 (5th Cir.1958). There, the plaintiff filed suit in the United States District Court for the Southern District of Mississippi. He sought a declaratory judgment of non-liability for certain Mississippi sales and use taxes, which the plaintiff alleged were imposed without statutory authority. Against application of the Tax Injunction Act, the plaintiff specifically argued "that what is here claimed to be a tax is merely an arbitrary and unlawful demand which is not authorized by any statute in Mississippi and cannot in any sense be considered or characterized as a tax imposed under state law." *Shepherd, supra*, at 883. The Fifth Circuit rejected this argument and affirmed the district court's dismissal of the case based on the Tax Injunction Act. *Id.* at 884. Clearly, arguing that an assessment is not a "tax" because it is imposed without authority under State law does not take the assessment out of the purview of the Tax Injunction Act. On the contrary, the very existence of the question rather establishes the application of the Act to the extant controversy. The very principles of federalism which undergird the Act require that the Alabama courts resolve this question of Alabama law.

Finally, while the court has undertaken its own examination of the jurisdictional issue presented in this case, the court notes that at least one other district court faced with similar circumstances has reached the same conclusion as that reached by this court. *City of Chattanooga v. BellSouth Telecommunications, Inc.*, 1 F.Supp.2d 809 (E.D.Tenn.1998). In that case, the City of Chattanooga imposed a 5% tax on the gross revenues earned by telecommunications providers within the city.[3] *Id.* at 813. In addition, any telecommunications provider which installed optical fiber in the city's rights-of-way was required, as a condition of that installation, to provide the city with four "dark" fibers for its own unrestricted use. Several telecommunications providers challenged these and other provisions under the Telecommunications Act of 1996.

The district court concluded that the challenged exactions constituted "tax[es] under State law" within the meaning of the

---

**3.** As a "fallback" provision, the ordinance at issue in *Chattanooga* provided that, in the event the city was not permitted to impose a gross revenues tax, the city would impose a flat fee per linear foot of right-of-way occupied by the telecommunications provider. *Chattanooga, supra*, at 813.

**1316**

Tax Injunction Act. In so holding, the court noted that "the City has made no effort to relate the franchise fee to its costs in maintaining its rights of way" and that "the destination of the revenue raised by the franchise fees will be the City's general revenue." *Id.* at 813–14.

Again, in this case, the County has made no attempt to correlate its right-of-way fee to the costs of maintaining its rights-of-way; it has imposed the same fee regardless of the nature of the installation, and it requires Lightwave to restore the right-of-way to its original condition *in addition to* payment of the fee. Also, the revenues raised by the fees at issue in this case inure to the benefit of all Escambia County residents in the form of roads and bridges. The case at bar therefore involves a "tax," not a regulatory fee or user fee.

C. Does Lightwave have a "plain, speedy, and efficient remedy" in State court?

██ The plaintiff in this case also has a plain, speedy, and efficient state court remedy. Lightwave has articulated no reason why it may not re-file this action in any of the State courts where jurisdiction and venue would be proper under State procedural rules. Since discovery has already proceeded in this court, the State-court case should consist of little more than the court's resolution of the parties' cross-motions for summary judgment.

Because Alabama provides a forum where the plaintiff can raise its federal and state claims, the plaintiff does have a "plain, speedy, and efficient remedy" in State court. *See* 28 U.S.C. § 1341; *Rosewell v. LaSalle National Bank, supra,* 450 U.S. at 512, 101 S.Ct. 1221.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Tax Injunction Act prohibits this court to exercise subject-matter jurisdiction over this case. The motion to dismiss (Doc. 15) is GRANTED, and this action is DIS-MISSED WITHOUT PREJUDICE.

**SO ORDERED.**